IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. ELH-18-072 |
| HEALIN BROWN,<br>*Defendant.* | |

**MEMORANDUM OPINION**

Healin Brown filed a pro se "Emergency Motion for Reduction of Sentence Pursuant to Section 603 of the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A), and/or Home Confinement Pursuant to the CARES Act of 2020." ECF 198. Thereafter, through counsel, Brown filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 208. The motion is supported by a memorandum of law (ECF 210) (collectively, the "Motion") and three exhibits. ECF 210-1 to ECF 210-3. The government opposes the Motion (ECF 214) and submitted one exhibit. ECF 214-1. Defendant has replied. ECF 217.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.   Background**

On February 7, 2018, a federal grand jury in the District of Maryland returned an indictment charging Brown and three codefendants with crimes relating to the operation of a drug trafficking organization in northwest Baltimore between May 2017 and February 2018. ECF 1. In particular, Brown was charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2. *Id.*

Pursuant to a Plea Agreement (ECF 86), Brown entered a plea of guilty to the single count on December 17, 2018. ECF 85. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment of 120 months. ECF 86, ¶ 11. That corresponded to the congressionally mandated minimum term of ten years' imprisonment. *See id.* ¶ 3; *see also* 21 U.S.C. § 841(b)(1)(A).

The Plea Agreement included a stipulation of facts. *See id.* at 4-5. According to the stipulation, law enforcement observed the defendant supervising an "open air shop selling retail heroin" in Baltimore and "supplying bags…of heroin to street distributers." *Id.* Law enforcement also sent undercover agents to make purchases from defendant on multiple occasions. *Id.* And, "on numerous occasions, the Defendant expressed a capacity to satisfy orders of kilograms' worth of heroin." *Id.* at 5. Following the defendant's arrest, he "admitted to obtaining substantial quantities of heroin for many months which he supplied to street level dealers for retail distribution." *Id.*

Pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the parties agreed to the application of enhancements for maintaining a premise for the purpose of manufacturing or distributing the controlled substances and for the defendant's leadership role, as well as deductions for acceptance of responsibility. *Id.* ¶ 7. On this basis, the parties contemplated a final offense level of 33. *Id.* However, the parties also agreed that the defendant qualified as a Career Offender, pursuant to U.S.S.G. § 4B1.1, because this was the defendant's third conviction for a felony controlled substance offense. *Id.* ¶ 9. As a result, the defendant

actually had a final offense level of 34. *See* ECF 103 ("Presentence Report" or "PSR"), ¶¶ 22, 25.[1]

As a Career Offender, defendant's Criminal History Category was VI. *Id.* ¶ 40. If he were not a Career Offender, however, Brown would have had a Criminal History Category of V. *See id.* ¶¶ 38, 39.

Based on an offense level of 34 and a Criminal History Category of VI, Brown's Guidelines called for a period of incarceration ranging from 262 to 327 months of imprisonment. *Id.* ¶ 94. As noted, he was also subject to a mandatory minimum term of ten years' imprisonment under 21 U.S.C. § 841(b)(1)(A). *Id.* ¶ 93.

Sentencing was held about 19 months ago, on April 25, 2019. ECF 132. At the time, the defendant was 56 years old. ECF 103 at 2. Defendant, who has a high school diploma, had not been employed since 2000. *Id.* ¶¶ 87, 89. And, he began abusing marijuana at 19 years of age. *Id.* ¶ 84. Notably, the defendant reported that he has diabetes, but otherwise indicated that he had no health issues. *Id.* ¶ 78.

Pursuant to the Plea Agreement, the Court imposed a term of 120 months of imprisonment, with credit from the date of arrest on February 8, 2018. ECF 144 (Judgment); ECF 145 (Statement of Reasons). Thus, Brown's sentence was well below the advisory sentencing Guidelines range of 262 to 327 months' incarceration.

Brown, who was born in 1962, is now 57 years of age. He is presently incarcerated at FCI Fort Dix. ECF 210-2 (Summary Reentry Plan). Brown has served about 33 months of his

---

[1] As a Career Offender, the defendant had an offense level of 37, before deductions for acceptance of responsibility. *Id.* ¶ 22. After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, Brown's final offense level was 34. *Id.* ¶ 25.

sentence. This equates to about 28% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). Defendant has a projected release date of August 2, 2026. ECF 210-2 at 1.

Defendant's medical history includes Type 2 diabetes, for which he is prescribed medication, and hypertension. ECF 210 at 6; ECF 103, ¶ 78. He was also shot during a robbery in 1995. ECF 103, ¶ 78.[2]

Brown filed a request for reduction in sentence with the Warden on April 27, 2020. ECF 210 at 2; *see* ECF 214-1. The request was denied on May 4, 2020, and Brown filed an administrative appeal. *See* ECF 210-3. He has not received a response. The government does not dispute that Brown has exhausted his administrative remedies. ECF 214 at 3.

Additional facts are included, *infra*.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for

---

[2] Defendant does not provide any additional details on this incident, nor does he discuss any ongoing health issues as a result of the gunshot. *See* ECF 103; ECF 210.

relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses

5

for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

6

Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D) is titled "**Other Reasons.**" It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Court may not rely on the Program Statement, however. Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[3]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[4] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of November 9, 2020, COVID-19 has infected more than 9.9 million Americans and caused over 237,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Nov. 9, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools have reopened, many are subject to substantial restrictions.  And, in view of the recent resurgence of the virus, businesses and schools are again facing restrictions or closure.

Unfortunately, there is currently no vaccine, cure, or proven treatment that is available, although we are all hopeful that a vaccine is on the horizon. Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight, pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social

distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

11

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. *See* ECF 214 at 5-6 (detailing measures that BOP has implemented at BOP facilities). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[5] As of November 9, 2020, the BOP had 125,421 federal inmates and 36,000 staff. Also as of November

---

[5] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450

9, 2020, the BOP reported that 2,092 inmates and 899 BOP staff currently tested positive for COVID-19; 16,610 inmates and 1,496 staff had recovered from the virus; and 134 inmates and two staff member have died from the virus. And, the BOP has completed 72,547 COVID-19 tests. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 9, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to Fort Dix FCI, where the defendant is a prisoner, as of November 9, 2020, the BOP reported that 228 inmates and 10 staff have currently tested positive for COVID-19 and 41 inmates and 6 staff have recovered at the facility. And, the facility has completed 1144 tests. There are no reported deaths. *See* https://www.bop.gov/coronavirus/ (last accessed Nov. 9, 2020).

## IV. Discussion

Brown moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 210 at 5-8. In particular, defendant avers that he suffers from two conditions identified by the CDC as risk factors: Type 2 diabetes and hypertension. *Id.* at 6; *see* ECF 210-1 (Medical Records) at 3, 23. Further, defendant contends that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor his release. ECF 210 at 8-9.

The government acknowledges that Brown's Type 2 diabetes constitutes an "extraordinary and compelling" reason for relief in light of the CDC guidance. ECF 214 at 8. But, the government contends that compassionate release is still not warranted because

---

inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-3f68d7b814c8&variant=1_Show.

defendant's "condition alone does not compel his release." *Id.* at 9-10. And, in any event, the government maintains that Brown would pose a danger if released prematurely, and it argues that the § 3553(a) factors militate against reducing his sentence. *Id.* at 10-13.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including diabetes and hypertension, as well as age, qualify as a compelling reason for compassionate release. *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. Apr. 2020) (defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. Apr. 2020) (finding defendant's hypertension and diabetes qualified as extraordinary and compelling reason).

As noted, the government concedes that, under the CDC guidance, Brown's diabetes constitutes an "extraordinary and compelling reason." ECF 214 at 8. In addition, given the current number of cases at Ft. Dix, it cannot be disputed that the coronavirus has entered the prison. Accordingly, I am satisfied that Brown readily satisfies the "extraordinary and compelling" prong of the § 3582 analysis. But, that determination does not end the inquiry.

The Court must also consider whether, if released, Brown would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). The government urges that conclusion, citing

the seriousness of his offense and the defendant's prior criminal history, which consists of numerous prior convictions. ECF 214 at 10-12.

Brown acknowledges the seriousness of the crime at issue here. ECF 210 at 8. But, he argues that the offense did not involve weapons or allegations of violence. *Id.*

As I see it, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Brown's sentence at this time. The factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Brown's prior record is particularly relevant to the analysis. From 1984 to 2012, defendant amassed numerous drug convictions and a handgun conviction. ECF 103, ¶¶ 28, 29, 31, 34, 35, 36, 37. For some of these convictions, Brown received lengthy sentences, but they were mostly suspended. *See*, *e.g.*, *id.* ¶¶ 32, 33, 34. For others, he received sentences ranging from two to four years. *See id.* ¶¶ 29, 36, 37. But, in the Maryland penal system, a defendant is eligible for parole, and generally does not serve the whole sentence. For other offenses, the defendant received sentences under a year. *See id.* ¶¶ 30, 31. Defendant did receive one particularly lengthy sentence; in 2002, for the offense of conspiracy to distribute heroin, defendant was sentenced to 25 years' incarceration, of which 15 years was suspended. *Id.* ¶ 35. He served about five years of that sentence, and was then paroled. *Id.* Brown subsequently violated his parole. *Id.* Yet, these numerous prosecutions and convictions, along with time in prison, did not deter defendant from the commission of the offense that led to his federal prosecution.

Moreover, the defendant's sentence in this case is significantly below the Guidelines' range. And, as noted, the defendant has only served about 28% of his sentence.

Given the facts of the offense, coupled with the defendant's prior criminal history and the amount of time that defendant has served to date, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

## V. Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 208), *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.


Date:   November 10, 2020                           /s/
                                         Ellen Lipton Hollander
                                         United States District Judge